UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| v. | ) | Case No. | 1:21-CR-35-HAB |
| | ) | | 1:22-CV-429-HAB |
| CALVIN MITCHELL | ) | | |

**OPINION AND ORDER**

Defendant was recorded making five illegal drug sales to a confidential informant. Those sales prompted a five-count drug distribution indictment. Defendant pleaded guilty to a single count of distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and the other charges were dismissed. Defendant received a below-guidelines sentence of 240 months' imprisonment.

Not satisfied with a below-guidelines sentence despite overwhelming evidence, Defendant now moves to vacate his sentence under 28 U.S.C. § 2255. (ECF No. 61). He claims that his counsel was ineffective in challenging the Government's evidence during the plea and sentencing proceedings. After a series of procedural detours, the motion is now ready for ruling.

**I.      Factual and Procedural Background**

**A.      *Offense Conduct***

Over two weeks in early 2021, Defendant sold methamphetamine and fentanyl to a confidential informant. Each of the five sales was recorded by law enforcement. Investigators then executed a search warrant of Defendant's residence, uncovering more methamphetamine, cutting agents, other paraphernalia, and $7,000 in cash.

**B.**     ***Prosecution, Plea, and Sentencing***

Defendant was indicted on five counts of drug distribution in April 2021. He was found indigent, and Donald C. Swanson, Jr. ("Swanson") was appointed as Defendant's counsel. Because of the volume of evidence produced by the Government, Swanson hired, with the Court's approval, an investigator to help review the evidence with Defendant. (ECF No. 32).

Defendant pleaded guilty pursuant to a plea agreement in September 2021. The plea agreement called for Defendant to plead guilty to Count 4 in exchange for the dismissal of the other charges. (ECF No. 37 at 4, 6). Defendant and the United States agreed to the amount of controlled substances (at least 3,000 kg but less than 10,000 kg converted drug weight) and further agreed that Defendant maintained a premises for distributing a controlled substance under U.S.S.G. § 2D1.1(b)(12). (*Id*. at 5). The Government also agreed not to file an enhancement information under 21 U.S.C. § 851. (*Id*. at 6-7). Finally, Defendant agreed to waive his

> right to appeal or to contest [his] conviction and all components of [his] sentence or the manner in which [his] conviction or my sentence was determined or imposed, to any Court on any ground other than a claim of ineffective assistance of counsel, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

(*Id*. at 6).

Magistrate Judge Susan Collins queried Defendant at his plea hearing to ensure that he understood the terms of the plea agreement. Defendant confirmed that he was satisfied with the plea and Swanson's representation. He confirmed that he had read and understood the plea agreement, including the agreement to the maintaining a premises enhancement. He twice testified that no one had made him any promises not contained in the plea agreement and testified that no one tricked him into signing the plea agreement. Magistrate Judge Collins reviewed the potential sentences with Defendant, including the mandatory minimum sentence of 10 years and a possible

sentence of life imprisonment. Defendant confirmed that he understood this sentencing range, that the Court would review various factors in determining a sentence, and that he could receive a sentence greater or lesser than the advisory range.

The United States Probation Officer prepared a draft presentence investigation report. (ECF No. 45). Relevant here, Defendant was assessed a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises to manufacture or distribute a controlled substance. Defendant was also found to be a career offender under U.S.S.G. § 4B1.1(b)(1). Defendant's career offender status drove his offense level, resulting in a pre-acceptance level of 37.

Swanson objected to the draft report. (ECF No. 48). He objected to both the career offender designation and the maintaining enhancement. Both objections were overruled. (ECF No. 51, 54). Defendant was sentenced in January 2022 to 240 months' imprisonment with five years of supervised release to follow.

C.    *2255 Proceedings*

Defendant filed a thirteen-page § 2255 motion in November 2022. (ECF No. 61). That motion raised six grounds: ineffective assistance of counsel ("IAC") for failing to challenge the Government's case; inadequate indictment; IAC for failing to challenge the career offender enhancement; that his plea was not knowingly and voluntarily made; IAC for failing to challenge the maintaining a premises enhancement; and a legal argument that he did not qualify as a career offender because his state convictions were not qualifying drug offenses. The Government timely responded. (ECF No. 65).

In April 2023, Defendant moved for leave to amend his § 2255 motion. (ECF No. 69). That motion was denied because Defendant failed to provide a proposed amendment. (ECF No. 70) A proposed amendment was filed at the end of May 2023. (ECF No. 71). The amendment contained

3

four grounds: IAC for failing to file an appeal; IAC for failing to challenge the Government's case; IAC for failing to explain, and misrepresenting, the terms of the plea agreement; and IAC for failing to request a psychiatric examination as part of the presentence investigation report.

Because the amendment was filed beyond the one-year time limit for motions under § 2255, the Court ordered the Government to provide its position on the appropriateness of the amendment. (ECF No. 72). The Government did so. (ECF No. 73). After considering the proposed amendment and the Government's position, the Court concluded that grounds 1 and 4 in the amended petition were untimely, that they did not relate back under Fed. R. Civ. P. 15(c), and that they should be dismissed. The Court allowed Defendant to proceed on grounds 2 and 3 of the amendment. (ECF No. 74). The Government timely responded to the grounds in the amendment. (ECF No. 75).

Defendant moved the Court to reconsider the dismissal of grounds 1 and 4 (ECF No. 76), and the motion was denied. (ECF No. 77). Defendant then moved to correct error in his § 2255 petition (ECF No. 81), which the Court construed as a second amendment. (ECF No. 82). The second amendment sought to add grounds 5 (IAC for failing to challenge the maintaining a premises enhancement) and 6 (legal challenge to the state convictions as qualifying convictions) from the initial petition. The Court further construed Defendant's petition as proceeding under grounds 2 and 3 from the initial amended petition and grounds 5 and 6 from the second amended petition. (*Id.*). The Court ordered the Government to respond to the grounds in the second amended petition, which it timely did. (ECF No. 83). Defendant has filed a reply (ECF No. 89) and the petition is now ready for ruling.

4

## II. Legal Discussion

### A. *28 U.S.C. § 2255*

Relief under 28 U.S.C. § 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). To proceed on a motion under § 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence exceeded the maximum authorized by law or is otherwise subject to collateral attack. *Id.* A § 2255 motion is neither a substitute for nor a recapitulation of a direct appeal. *Id*. As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992). Additionally, aside from showing "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a § 2255 movant may alternatively pursue such errors after proving that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008). This general rule does not apply to claims of ineffective assistance of counsel, which may be brought via § 2255 even if not pursued during a direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

### B. *IAC Standard*

To make out a successful ineffective assistance of counsel claim, Defendant must show that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the

5

deficient performance so prejudiced his defense that it deprived him of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 688-94 (1984).

> With regard to the performance prong, [the] defendant must direct us to the specific acts or omissions which form the basis of his claim. The court must then determine whether, in light of all the circumstances, the alleged acts or omissions were outside the wide range of professionally competent assistance.

*United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). Moreover, claims that an attorney was ineffective necessarily involve inquiries into an attorney's trial strategies, which in turn requires facts which usually are not contained in the trial record. Thus, many trial determinations, like so many "other decisions that an attorney must make in the course of representation[, are] a matter of professional judgment." *United States v. Berkowitz*, 927 F.2d 1376, 1382 (7th Cir. 1991). Thus, the Court must resist a natural temptation to become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

> It is not our task to call the plays as we think they should have been called. On the contrary, we must seek to evaluate the conduct from counsel's perspective at the time, and must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.

*United States v. Ashimi*, 932 F.2d 643, 648 (7th Cir. 1991) (citations and quotations omitted). Should the petitioner satisfy the performance prong, he must then fulfill the prejudice prong by demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *United States v. Starnes*, 14 F.3d 1207, 1209-10 (7th Cir. 1994). "In making the determination whether the specified errors resulted in the required prejudice, a court should presume . . . that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694.

**C.**     ***Swanson was not Ineffective in Challenging the Government's Evidence***

Defendant's first ground is that Swanson "failed at every corner to subject the governments' [sic] case to any adversarial test." (ECF No. 71 at 3). He identifies eight areas that Swanson should have investigated:

- the sufficiency of the evidence
- the credibility of the CI used
- the lab results of the drugs seized
- the withheld discovery from the USA
- the viability of the "stash house"
- the entrapment allegations made
- the coercion allegations made
- Brady violations that occurred

(*Id.*).

Apparently understanding that he cannot satisfy the *Strickland* test[1], Defendant asks the Court to apply the standard from *United States v. Cronic*, 466 U.S. 648 (1984). Under *Cronic*, "where there has been a complete denial of counsel, where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, or where the circumstances make effectiveness impossible—prejudice is presumed." *Patrasso v. Nelson*, 121 F.3d 297, 302 (7th Cir. 1997) (quotations omitted). But the *Cronic* exception is "exceedingly narrow," and applies "only to non-representation, not poor representation." *Miller v. Martin*, 481 F.3d 468, 472-73 (7th Cir. 2007).

The Court cannot find non-representation on this record. Swanson engaged the services of an investigator to review evidence. Swanson negotiated a plea that resulted in four of five charges being dismissed and precluded the Government from pursuing an enhancement under 21 U.S.C. §

---

[1] The Court agrees that Defendant cannot satisfy the *Strickland* test. Defendant has not told the Court what any of the proposed investigation would have uncovered. He has failed, then, to provide "a comprehensive showing as to what the investigation would have produced." *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004). Without that, Defendant cannot establish prejudice.

851. Swanson objected to the draft presentence investigation report. Swanson filed a sentencing memorandum (ECF No. 50) identifying several mitigators, including Defendant's childhood, his youthful use of narcotics, and his high school diploma. That memorandum sought a 13-level variance based on those mitigators. (*Id*. at 3). Swanson also presented argument on Defendant's behalf at sentencing, challenging the credibility of the CI and asking for a statutory, mandatory minimum sentence of 10 years. (ECF No. 64 at 16-17).

Simply put, this is not a case where Swanson "did nothing." *Miller*, 481 F.3d at 473. And, not for nothing, Swanson's efforts were successful—Defendant's sentence was 22 months below the bottom end of his guideline range. *Cronic* does not apply, and Defendant cannot show IAC for failing to challenge the Government's case.

**D.**   ***Swanson was not Ineffective in Failing to Explain, or Misrepresenting, the Terms of the Plea Agreement***

Defendant next asserts that Swanson "failed to explain the nature of [his] plea agreement, along with the exposure to different sentence lengths and enhancements." (ECF No. 71 at 4). He alleges that Swanson promised that he would receive a 120-month sentence "with no other enhancements." (*Id*. at 5).

Defendant's argument is betrayed by his own statements during his change of plea hearing. Defendant stated, under oath, that no one had made him any promise not contained in the plea agreement. (ECF No. 63 at 13). He stated that there were no side agreements with the Government. (*Id*. at 14). He stated that no one had, in any way, attempted to force him to plead guilty or otherwise threatened him. (*Id*. at 18). He stated that he understood that he faced a sentence of "not less than 10 years, but not more than life," and that the Court could sentence him to imprisonment "greater or lesser than the advisory guidelines." (*Id*. at 19, 21). Each of these statements, made under oath, directly contradict his current arguments.

"Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard. A defendant has no legal entitlement to benefit by contradicting himself under oath. Thus when the judge credits the defendant's statements in open court, the game is over." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999). Magistrate Judge Collins credited Defendant's statements in accepting his plea, and this Court did likewise when it adopted Magistrate Judge Collins' Report and Recommendation. (ECF No. 43). As the Seventh Circuit said, the game is over.

E.  *Swanson was not Ineffective in Failing to Challenge the Maintaining a Premises Enhancement*

The easiest ground to address is Defendant's claim that Swanson "did not properly challenge the additional enhancement" for maintaining a premises. (ECF No. 81 at 2). Swanson did challenge the enhancement. (ECF No. 48). The challenge failed because Defendant agreed to the enhancement in his plea. (ECF No. 54). The Court can think of nothing that Swanson could have done to challenge the enhancement considering the plea language, and Defendant suggests nothing.

Swanson's efforts are not Constitutionally ineffective "just because the defendant's arguments have been considered and rejected" by this Court. *Brown v. Caraway*, 719 F.3d 583, 597 (7th Cir. 2013). Rather, he satisfied *Strickland*'s requirement by presenting "the best available defense, even if that defense is doomed." *Id*. Any challenge to the enhancement was doomed after Defendant's plea, and the Court will not find Swanson ineffective for failing to do the impossible.

But even if there were a legal way around Defendant's plea, he could not show prejudice from failing to challenge the enhancement. As noted above, Defendant's offense level was set by his career offender status, not the application of § 2D1.1(b)(12). (*See* ECF No. 52 at 8). Stated a different way, Defendant's offense level would have been the same whether the maintaining a

9

premises enhancement was applied or not. Any error on Swanson's part, then, was harmless. *See United States v. Adigun*, 703 F.3d 1014, 1023 (7th Cir. 2012) (miscalculation of mandatory minimum harmless where it did not affect the guideline range).

**F.**   ***Swanson was not Ineffective for Failing to Challenge the Career Criminal Enhancement***

Finally, Defendant claims that he was wrongly sentenced as a career offender under U.S.S.G. § 4B1.1(b)(1). And while it's not clear what Defendant's precise argument is, there is no merit to such a claim.[2]

Defendant first appears to argue that he was misled by Swanson into pleading guilty because Swanson represented that he would receive a sentence of 120 months. The Court has fully addressed that argument in Section II.D. above and need not do so again.

Defendant next asserts that the Government breached its plea agreement when it advocated for a sentence at the low end of the § 4B1.1-enhanced range. He reasons that, since the Government agreed not to pursue the § 851 enhancement, it was also precluded from advocating for a sentence imposed under the career offender guideline. Defendant's argument fails to grasp that § 851 and § 4B1.1 are different sentencing regimes, with different prerequisites. *See United States v. Bolling*, 429 Fed. App'x. 620, 622 (7th Cir. 2011). Nothing in the plea prevented the application of § 4B1.1, and the Government did nothing wrong when it advocated for a sentence at the low end of the range after the Guidelines were applied.

At base, the Court interprets Defendant's argument as a collateral attack on the state convictions that made him a career offender in the first place. Defendant devotes five pages to convincing the Court that he didn't commit the state crimes for which he was convicted. (ECF No. 81 at 5-9). But as the Government rightly notes, he cannot undermine those state convictions

---

[2] Defendant does not argue that his state convictions were not proper predicate offenses under § 4B1.1(b)(1).

through a § 2255 motion. *Ryan v. United States*, 214 F.3d 877, 879-82 (7th Cir. 2000). The fact of those convictions is enough to apply the career offender enhancement, and a motion to vacate cannot change the analysis.

### III.   Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). Because the Court finds that no reasonable jurist could conclude that Defendant is entitled to relief, no certificate of appealability will be issued.

### IV.   Conclusion

For these reasons, Defendant's motion to vacate (ECF No. 61) and all amendments are DENIED. No certificate of appealability will issue.

SO ORDERED on May 30, 2024.

s/ *Holly A. Brady*  
CHIEF JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT